Benjamin Gassman, P. J.
By stipulation, both of the above cases were tried together, with separate judgments to be entered in each.
In the first titled information, the defendants Negrin, Safarty and Grossman were charged with (a) criminally buying and receiving stolen property, consisting of 4 cases of handkerchiefs valued at $68.40; (b) criminally concealing and withholding the said property; and (c) petit larceny involving those handkerchiefs. In the second titled information, the defendants Davis and Powell were charged with petit larceny, in that they stole 20 cases of handkerchiefs from their employer, valued at not more than $100.
At the trial, the People, with the consent of his attorney, called defendant Powell as their witness. After he was warned by the court of his constitutional rights, and with his attorney standing by his side, Powell testified that Davis and he were employed as shipping clerks by Brooklyn Handkerchief Com *183 pany; that the defendant Grossman, a truckman employed by Rogers Trucking Company, who had been calling at their employer’s place of business to pick up packages, approached him in February, 1959, and in the presence of Davis propositioned him to enter into a “ handkerchief deal ” with him, suggesting that Powell get for him cartons of handkerchiefs (which presumably Powell should steal from his employer) and that Grossman would pay him $20 per carton for them. Powell later discussed this matter with Davis, who agreed to join him in this “deal”, with the $20 per carton to be divided between them. Thereafter, Davis got the handkerchiefs together, giving them to Powell and Powell sold them to Grossman at the price agreed upon.
Police Detective Kelly testified that he spoke to one Margolis, who had a store on Blake Avenue, and later spoke to Negrin. He showed Negrin one of the handkerchiefs which he previously, obtained from Margolis, and Negrin told him that he bought those handkerchiefs from one “Pete”, whom he later identified as Grossman; that Safarty and he paid Grossman $28 per carton and later sold 20 dozen handkerchiefs to Margolis and the rest to stores in the area of Belmont Avenue. The detective took both Negrin and Safarty to Margolis, who identified Negrin as the one who sold the handkerchiefs to him. He did not, however, identify Safarty. The detective also spoke to Safarty, who told him that he knew that the handkerchiefs were stolen.
The detective then questioned Grossman. 1 ‘ Grossman told me that if I could promise him he wouldn’t be arrested, that he could tell me the whole story — how he got the merchandise — where he got the merchandise. I told him I didn’t have that power. In view of that and as far as he was concerned, he didn’t remember.”
Detective Kelly questioned Davis, who told him that he sold the handkerchiefs to Grossman at $20 per carton, and signed a confession to the effect that he and Powell “ have been selling to a truck driver named Leo from Rogers Trucking Company one and sometimes two cartons of handkerchiefs, for the sum of twenty dollars, which we split $10 each. This has happened once or twice a week. ’ ’ The confession was admitted in evidence.
Milton Kade, a partner of Brooklyn Handkerchief Company identified the handkerchief produced by the detective as having been manufactured by his firm; that neither Davis nor Ppwell had permission to take or sell any of the handkerchiefs, and that his firm did no business with Margolis. His firm sold those handkerchiefs all over the country, and he could not state whether the handkerchief in evidence was one of those sold to *184 the firm’s regular customers or as one of the handkerchiefs stolen.
The above constitutes the People’s case. Bach of the defendants rested and, except for the defendant Powell, each defendant moved for an acquittal. Powell did not join in that motion, merely asking the court “ to reserve decision ”. He was supported in that request by the Assistant District Attorney who advised us that, by agreement between him and Powell’s attorney, Powell was to be granted immunity and that the information against him would later be dismissed, in return for his testimony against the other defendants.
The proof before us thus consists of (1) the testimony of Powell; (2) the written confession of Davis; and (3) the testimony of Detective Kelly as to admissions made to him by the defendants other than Grossman.
The question before us therefore is — whether there is sufficient corroboration under the law, as required by section 395 of the Code of Criminal Procedure (which requires corroboration of a confession) and by section 399 of the Code of Criminal Procedure (which requires corroboration of the testimony of an accomplice).
That Powell and Davis are accomplices in the petit larceny charge, there is no question. Hence, the implication of one by the other requires corroboration before either of them can be held guilty. The testimony of Powell is not corroborated by the confession of Davis, nor is Davis’ confession corroborated by Powell’s testimony. Where several accomplices testify, the testimony of one cannot be considered corroboration of the testimony given by the others. (People v. O’Farrell, 175 N. Y. 323.) There is thus no corroboration either of Davis’ confession or of Powell’s testimony. There is not sufficient evidence, as a matter of law, to convict either of them.
However, while Powell and Davis are accomplices of each other in the petit larceny ease, neither is an accomplice of Negrin, Safarty or Grossman in the receiving and concealing case, under section 1308-a of the Penal Law, which provides in substance that the thief is not an accomplice of the person charged with receiving or concealing.
Hence, Powell’s testimony and Davis’ confession, with respect to and insofar as they may implicate Negrin and Safarty, if legally sufficient and credible, do not require corroboration. With respect to the effect of their confessions on the charge against Grossman, the situation is different and will be discussed separately.
*185 As to the case against Safarty, neither Powell’s testimony nor Davis’ confession mentions him at all. The only person mentioned is Grossman. The proof against Safarty consists of the detective?s testimony to the effect that Safarty (and Negrin) admitted to him that they sold the handkerchiefs to Margolis and that they knew them to be stolen. When the detective brought Safarty and Negrin to Margolis, the only person identified by Margolis was Negrin. He did not identify Safarty. Hence, there is a total failure of proof against Safarty.
The ease against Negrin rests upon the admission made by him to Detective Kelly, to the effect that he knew the handkerchiefs to be stolen, plus the detective’s testimony that Margolis identified Negrin. Margolis was not called as a witness and no explanation was offered for the failure to call him. Even if it be assumed that the identification of Negrin was sufficient, there is the question whether he can be held on the charge of receiving, in the absence of competent proof that the property was stolen. It is true that unexplained possession of recently stolen property raises a presumption of guilt. However, no such presumption can be indulged in here, for the reason that there was no competent evidence offered of any shortage, loss or theft in the owner’s inventory. Thus, aside from the confession and admissions, there is no independent proof of any larceny, without which there can be no conviction on the charge of criminally buying and receiving.
We now come to the case against Grossman. The evidence against him consists of the admissions made by Negrin and Safarty to Detective Kelly, to the effect that Grossman sold the handkerchiefs to them, plus the testimony of Powell and the written confession of Davis. Negrin and Safarty are accomplices of Grossman in the receiving case and their testimony requires corroboration, which was not furnished. There is thus left only the testimony of Powell and the written confession of Davis. Do they supply the needed corroboration?
Section 1308-a of the Penal Law refers to instances where the receiver had no part in the original theft. In such a case, the thief is not an accomplice of the receiver. Where, however, the receiver induced, aided and abetted in the original larceny, he became an accomplice of the thief and the thief, in turn, became his accomplice. The provisions of section 1308-a of the Penal Law do not apply in such a case.
Section 2 of the Penal Law provides that “ a person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission, *186 and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another to commit a drime, is a principal.” If the testimony of Powell and the confession of Davis are to be given credence, Grossman ‘ ‘ counselled, induced and procured ” them to steal, and he is therefore a principal in the larceny charge. One who causes another to steal for him is guilty of larceny since “ it is a taking by both, and not a receipt by one from another.” (People v. Brien, 53 Hun 496, 497.)
Larceny and criminally receiving are distinct and independent crimes. (People v. Spivak, 237 N. Y. 460; People v. Kupperschmidt, 237 N. Y. 463, 465.) Each is a separate crime. A larcenist cannot criminally receive the same property. While a person may be indicted on both larceny and criminally receiving, he cannot be convicted of both. (People v. Bigley, 178 Misc. 552; People v. Daghita, 301 N. Y. 223, 228; People ex rel. Kondrk v. Foster, 190 Misc. 698, revd. on other grounds 274 App. Div. 850, affd. 299 N. Y. 329.) Hence, if Grossman is guilty at all, it is only of the crime of petit larceny and not receiving, provided the legal proof is sufficient to sustain the charge.
We must therefore hold that Powell and Davis were Gross-man’s accomplices in the larcenies and that their confessions required corroboration, which was not supplied.
In this case, there is a strong suspicion of guilt on the part of each defendant. However, our system of criminal jurisprudence requires more than mere suspicion, no matter how strong. It requires the proof of defendant’s guilt beyond a reasonable doubt, before he can be convicted. We might well adopt the language of Judge Crane in People v. Gowarsky (244 N. Y. 451, 471, 472): ‘ ‘ The ideal of justice is that the guilty shall never escape punishment and the innocent shall never be accused falsely or convicted mistakenly. In practice, justice under our law and procedure doubtless falls far short of this ideal, and the guilty at times escape because of rules intended for the protection of the innocent. * * * Justice is done according to law by sentence that the doors of a prison shall * * * close upon the accused only when the guilt has been established according to law. That has not been done here.”
Reluctantly, we must, as a matter of law, grant the motion made by each of the defendants. Each defendant is acquitted.